Jason R. Hull (11202)
**MARSHALL OLSON & HULL, PC**
Ten Exchange Place, Suite 350
Salt Lake City, UT 84111
Tel: (801) 456-7655
jhull@mohtrial.com

Emily Wasserman, *admitted pro hac vice*
Maxwell E. Hamilton, *admitted pro hac vice*
**DAVIS GRAHAM & STUBBS LLP**
3400 Walnut Street, Suite 700
Denver, CO 80205
Tel: (303) 892-9400
Emily.wasseman@davisgraham.com
Max.hamilton@davisgraham.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ACT EDUCATION CORP. F/K/A ACT, INC., a Delaware Corporation | **FIRST AMENDED COMPLAINT** |
| Plaintiff, | |
| vs. | Case No. 2:24-cv-00703-JNP-CMR |
| SCOTT HILDEBRANDT, an Individual, d/b/a EKNOWLEDGE a/k/a EKNOWLEDGE, LLC, a/k/a EKNOWLEDGE GROUP, INC.; and THE NATIONAL COLLEGE TEST PREP FOUNDATION, a Utah Nonprofit Corporation. | Judge Jill N. Parrish  Magistrate Judge Cecilia M. Romero |
| Defendants. | |

Plaintiff ACT Education Corp., f/k/a ACT, Inc. ("Plaintiff" and/or "ACT") hereby states

the following allegations for its First Amended Complaint against Defendants Scott Hildebrandt,

an individual, doing business as eKnowledge, also known as eKnowledge, LLC, also known as

eKnowledge Group, Inc. and the National College Test Prep Foundation ("NCTPF").

### INTRODUCTION

1.      This is a case of willful copyright infringement.

2. Mr. Hildebrandt wrongfully reproduced, distributed, and used ACT's copyrighted tests and answers for Mr. Hildebrandt's own benefit, to ACT's detriment, and without ACT's consent.

3. When ACT filed this lawsuit against Mr. Hildebrandt, Mr. Hildebrandt attempted to improperly transfer the infringing intellectual property to Defendant NCTPF.

4. Based on Mr. Hildebrandt's representations, NCTPF will operate as Mr. Hildebrandt had previously, including by using ACT's copyright tests and answers for its benefit, to ACT's detriment, and without ACT's consent.

### THE PARTIES

5. Plaintiff ACT Education Corp. is a Delaware corporation, having its principal place of business and headquarters located at 500 ACT Drive, Iowa City, Iowa, 52243.

6. ACT was founded in 1959 and was formerly known as The American College Testing Program, Inc. It changed its name to ACT, Inc. in December 1996. It became ACT Education Corp. in 2024.

7. ACT is a mission-driven organization dedicated to helping people achieve education and workplace success. ACT is trusted as a leader in college and career readiness, providing high-quality assessments grounded in nearly 60 years of research. ACT offers a uniquely integrated set of solutions designed to provide personalized insights that help individuals succeed from elementary school through their career. ACT provides assessments, research, information, and program management services in the broad areas of education and workforce development.

8. Defendant Scott Hildebrandt is a natural person domiciled in the state of Utah.

9. Mr. Hildebrandt does or did business under the names "eKnowledge," "eKnowledge Group, Inc.," and "eKnowledge, LLC."

10. Mr. Hildebrandt personally engaged in and directed the acts of infringement described herein.

11. On information and belief, Mr. Hildebrandt was previously a manager and/or member of eKnowledge, LLC, a defunct limited liability company organized under the laws of Nevada.

12. The Nevada Secretary of State's website indicates that eKnowledge, LLC has had its status "permanently revoked," meaning that it remained in default of its obligations for one year and has not been reinstated for five years.

13. On information and belief, Mr. Hildebrandt was also previously an officer and/or shareholder of eKnowledge Group, Inc., a defunct corporation organized under the laws of Nevada.

14. The Nevada Secretary of State's website indicates that eKnowledge Group, Inc. has had its status "permanently revoked," meaning that it remained in default of its obligations for one year and has not been reinstated for five years.

15. Upon information and belief, Mr. Hildebrandt has continued to represent that he is the CEO of "eKnowledge" and is doing business as "eKnowledge" despite there being no record of an up-to-date corporate registration in any state.

16. On information and belief, Mr. Hildebrandt has run the eKnowledge business out of his residence in Utah, while employing a support employee in Georgia.

17. Defendant NCTPF is a non-profit corporation incorporated under the laws of the state of Utah.

18. On information and belief, NCTPF's principal place of business is in Utah.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over the copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338.

20. This Court has supplemental jurisdiction over the Utah Uniform Voidable Transaction claim pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction over Defendant Hildebrandt because he is domiciled in the state of Utah.

22. This Court has personal jurisdiction over Defendant NCTPF because it is incorporated in the state of Utah.

23. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants Hildebrandt and NCTPF reside in this judicial district.

## FACTUAL ALLEGATIONS

**A.      ACT and the ACT Test**

24. ACT, founded in 1959, is a mission-driven and trusted organization dedicated to helping people achieve education and workplace success. On November 7, 1959, more than 75,000 students took the first ACT® college readiness test ("the ACT" or "the ACT test").

25. Nearly 1.4 million 2023 graduates around the U.S. took the ACT during high school.

26.     The ACT contains multiple-choice tests in four areas: English, mathematics, reading and science. ACT also offers an optional writing test that does not affect a person's Composite score. The ACT is currently one of the leading college readiness tests in the United States, measuring what students learn in high school to determine academic readiness for college.

27.     Each ACT test is an original work of authorship.

28.     ACT has applied for and obtained copyright registrations for its ACT tests, including the questions and answers.

29.     The ACT tests may not be reproduced or distributed by third parties without permission from ACT.

**B.     ACT's Test Prep Solutions for the ACT**

30.     In addition to the ACT test, ACT offers flexible test prep solutions to help individuals, schools, districts, and states meet goals for education and career success. Some are free of charge and others are for sale.

31.     ACT offers a free ACT Official Practice Test that can be accessed by creating an account on ACT's website.

32.     In order to assist students who have an ACT account in preparing for the ACT, ACT releases official ACT tests that contain real questions given to actual students on previous test dates ("Released Tests"). Items (questions) on the Released Tests have been removed from circulation and will not appear on future secure, proctored administrations of the ACT.

33.     The Released Tests are original works of authorship and subject to copyright protection and may not be reproduced, distributed or used without permission from ACT.

34. Use of ACT's website is subject to its Terms of Use. ACT's Terms of Use state: "Copyright: All content in the ACT Internet site is copyrighted. No material may be distributed, downloaded, modified, reused, reproduced, reposted, retransmitted, disseminated, sold, published, broadcast, circulated, or otherwise used except as expressly stated either in such materials or in this notice without the express written permission of ACT, Inc. For permission to reproduce copyrighted materials, contact the ACT Publications Department at Publications@act.org."

35. ACT also offers for sale the following publications:

(a) The Official ACT Prep Guide 2024-2025

(b) Subject Guides containing practice questions, detailed explanations, and test-taking strategies for each subject, including:

(i) The Official ACT English Guide.

(ii) The Official ACT Math Guide

(iii) The Official ACT Reading Guide

(iv) The Official ACT Science Guide

36. ACT has partnered with Kaplan, Inc. to create an official portfolio of online ACT preparation products offering live, content-based instruction from teachers and tutors. This product line includes The Official ACT® Self-Paced Course, Powered by Kaplan. Kaplan is an official ACT partner for live, online prep for the ACT test.

37. ACT knows that everyone has the potential to learn and believes that a student's family income should not determine his or her educational or career opportunities. For this reason, ACT offers the ACT® test fee waiver program to eligible students, who also obtain free access to The Official ACT® Self-Paced Course, Powered by Kaplan®.

6

**C. ACT's Intellectual Property Rights**

38. ACT owns many intellectual property rights, including but not limited to copyrights related to the ACT and rights related to ACT preparation materials.

39. As relevant to this lawsuit, ACT, Inc., ACT's predecessor-in-interest, applied for and obtained copyright registrations for its ACT tests.

40. Test forms ACT 1874 FPRE and ACT 1572 CPRE were test forms that ACT provided to the public via its free "Preparing for the ACT Test" publication.

41. ACT obtained U.S. Copyright Registration TXu 1-915-839 for the questions and answers in ACT 1874 FPRE.

42. The majority of the questions in ACT 1572 CPRE are covered by U.S. Copyright Registration TX 7-626-237. However, a small number of the questions and answers are covered by the following additional registrations: TX 4-412-610, TX 7-183-775, TX 6-967-179, TX 6-771-269, TX 7-183-775, and TX 7-399-987.

43. On May 1, 2024, ACT, Inc. assigned all rights, title, and interest to its copyrights, including the right to sue for past infringement, to ACT Education Corp., f/k/a Impact Asset Corp.

44. "ACT" is a registered trademark of ACT (the "ACT Mark" or "ACT Marks"). ACT first used ACT as a trademark on September 8, 1959.

45. ACT has substantial common law rights in its ACT Mark.

46. ACT also has multiple federal trademark and service mark registrations for its ACT Mark.

47. Among ACT's registrations are the following wordmark registrations: U.S. Trademark Registration No. 2888069, which was issued to ACT, Inc. on September 28, 2004, and No. 4517656, which was issued to Act, Inc. on April 22, 2014.

48. ACT also owns U.S. Trademark Registration No. 7052519, which was issued on May 16, 2023 and covers ACT's logo.

49. On May 1, 2024, ACT, Inc. assigned all rights, title, and interest to its ACT Marks, including the right to sue for past infringement, to ACT Education Corp., f/k/a Impact Asset Corp.

50. ACT has invested substantial time and money marketing, promoting, and distributing its products using the ACT Mark.

51. Due to these efforts, the ACT Mark is widely recognized by the public as a designation of the source of ACT's testing, preparation, and other products.

**D. Mr. Hildebrandt's Copyright Infringement**

52. Plaintiff and Defendants each offer for sale ACT test preparation products and services nationwide, including in the state of Utah.

53. Mr. Hildebrandt has operated a website as "eKnowledge" at the following address <https://new.eknowledge.com> (the "eKnowledge website").

54. The eKnowledge website claims that eKnowledge has been in business since 2004 and has helped over 300,000 students.

55. The eKnowledge website states that eKnowledge is "the official e-Learning Platform of the National Federation of High School Associations," which it claims represents "19,500 schools and 12 million students."

56. Mr. Hildebrandt has marketed and sold via the eKnowledge website the "PowerPrep" program to students and school districts that Mr. Hildebrandt claims increases ACT scores.

57. As part of the PowerPrep program, Mr. Hildebrandt has offered a diagnostic, which the eKnowledge website claims is "[m]ade with real ACT/SAT exams."

58. After students take the diagnostic, Mr. Hildebrandt has generated a "Smart Report" which purports to provide an ACT Score prediction and informs clients of areas that need attention.

59. Finally, Mr. Hildebrandt has claimed to create a custom study plan for students that features real ACT questions.

60. Mr. Hildebrandt has promised on the eKnowledge website that students who enroll in the program will be able to access "4 Real Tests."

61. Moreover, in describing how its program will help students with the ACT test, the eKnowledge website states that "PowerPrep gives you the most comprehensive math prep experience you can find anywhere, with multiple REAL ACT math tests."

62. Mr. Hildebrandt has further represented that PowerPrep contains "REAL exam passages and over 200 REAL exam questions from years past" from the ACT's English Grammar & Usage section and "hundreds of REAL exam questions and passages from recent years" from the ACT's Reading Comprehension and Science Reasoning sections.

63. Mr. Hildebrandt has touted "Real Questions" as a benefit of the eKnowledge program over competitor testing programs.

64. Mr. Hildebrandt did not, and does not, have permission from ACT to use or distribute any ACT test, or any ACT copyrighted works, or to create any derivative works thereof.

9

65. Mr. Hildebrandt did not, and does not, have permission from ACT to use or distribute any ACT practice questions.

**E.      Mr. Hildebrandt's Unfair Competition**

66. Mr. Hildebrandt has promoted his "ACT Diagnostic Test," "ACT Super," and "ACT/SAT Prep Program" on the eKnowledge website.

67. One of eKnowledge's case studies featured the ACT logo.



Figure 1. *ACT & SAT PowerPrep Program Overview,* eKnowledge (accessed on June 7, 2024), https://new.eknowledge.com/program-overview/.

68. Mr. Hildebrandt further offered to provide "Real" Act Tests.

69. Mr. Hildebrandt's eKnowledge program is not affiliated with ACT.

70. Mr. Hildebrandt did not, and does not, have permission to use the ACT Mark or ACT tests.

71. As one of its program offerings, eKnowledge claims to provide a "Score Prediction" for students who use its program. However, ACT uses a proprietary methodology to select the questions in each test and to calculate the scaled ACT score. eKnowledge does not have

access to this proprietary methodology, and cannot conclusively suggest to customers that scores on eKnowledge's assessments are equivalent to scores on the ACT test.

72. Upon information and belief, Mr. Hildebrandt has attempted to create consumer confusion and benefit from ACT's reputation and goodwill.

73. Upon information and belief, Mr. Hildebrandt has unfairly and unjustly benefitted from consumer confusion regarding an association or affiliation between ACT and Mr. Hildebrandt.

**F.      The Cease and Desist Communications**

74. After ACT learned that Mr. Hildebrandt was distributing ACT's copyrighted Released Tests, it sent an initial cease and desist letter to eKnowledge on July 18, 2022. In its communications, ACT demanded that eKnowledge remove all content that infringed on ACT's copyrights and trademark rights.

75. Since the initial letter, ACT has sent several follow-up letters and had several follow-up exchanges with Mr. Hildebrandt, including attempts to reach a business solution.

76. On March 6, 2023, Mr. Hildebrandt responded on behalf of eKnowledge to ACT's communications. In his response, Mr. Hildebrandt confirmed that eKnowledge was using ACT's released exam questions from prior exams.

77. Unable to reach a resolution, ACT sent Mr. Hildebrandt a final cease and desist letter on March 5, 2024. In its letter, ACT reiterated its demand that eKnowledge stop promoting and selling ACT's copyrighted testing material. ACT also demanded eKnowledge to cease use of the "ACT Diagnostic Test," "ACT Super," and "ACT/SAT Prep Program" phrasing on its website.

Finally, ACT demanded that eKnowledge stop promoting score prediction as a feature of its program.

78. When Mr. Hildebrandt declined to remove ACT's copyrighted materials from the eKnowledge website, ACT filed this lawsuit on September 24, 2024.

**G.** **Mr. Hildebrandt's Attempted Assignment to NCTPF**

79. After ACT filed this lawsuit, Mr. Hildebrandt worked to incorporate NCTPF as a not-for-profit entity.

80. NCTPF was incorporated in Utah on February 19, 2025.

81. Mr. Hildebrandt is the President of NCTPF.

82. The information available on the Utah Secretary of State's website shows that Mr. Hildebrandt is also on the Board of Directors of NCTPF.

83. Upon information and belief, Mr. Hildebrandt's son, Jordan Hildebrandt, and his wife, Michelle Hildebrandt, comprise two of NCTPF's five board members.

84. In a filing, Mr. Hildebrandt indicated in a sworn statement that he executed a Donation Agreement with NCTPF on March 30, 2025 to irrevocably donate all of his rights in the "SAT /ACT Learning Content," along with associated websites, software code, user records, and branding materials (the "eKnowledge platform") to NCTPF.

85. Mr. Hildebrandt did not receive fair consideration for the conveyance.

86. Mr. Hildebrandt further indicated that "[a]s of March 31, 2025, all operations of eKnowledge as my sole proprietorship will have ceased," and "[a]ll assets previously associated with eKnowledge . . . have been transferred."

87. However, Mr. Hildebrandt also indicated that "it will take several months to complete all aspects of the donation and transfers."

88. Mr. Hildebrandt moved to dismiss this case based on the transfer, arguing that "all of [eKnowledge's] assets have been irrevocably transferred, rendering Plaintiff's claims moot."

89. As of the date of this filing, the eKnowledge website remains active and continues to market eKnowledge's infringing materials.

90. On information and belief, NCTPF, which is controlled by Mr. Hildebrandt and his family, continues to operate the eKnowledge platform.

91. Alternatively, on information and belief, Mr. Hildebrandt continues to operate the eKnowledge platform pending transfer to NCTPF.

## H. Defendants' Continued Willful Infringement

92. Despite being put on notice of ACT's rights and of the eKnowledge platform's infringement, Mr. Hildebrandt and/or NCTPF have continued to violate ACT's exclusive rights, codified in 17 U.S.C. § 106, without permission from ACT, including the unauthorized reproduction, distribution and performance of ACT's copyrighted works.

93. Among other things, the eKnowledge website continues to promote its use of "real" ACT tests and questions. Mr. Hildebrandt and/or NCTPF continue to reproduce and/or distribute ACT's tests and questions without permission from ACT.

94. Mr. Hildebrandt and/or NCTPF's use of the ACT Tests and Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ACT, or as to the origin, sponsorship, or approval of Defendants' services, or commercial activities by ACT.

95. Mr. Hildebrandt and/or NCTPF are intending to trade off of ACT's reputation and goodwill to the detriment of ACT.

96. Defendants' infringement is knowing and willful.

**FIRST CLAIM FOR RELIEF**
(Direct Copyright Infringement; 17 U.S.C. § 101, et seq. – All Defendants)

97. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

98. This claim arises under the Copyright Act of 1976, 17 U.S.C. §101, et seq.

99. ACT's copyrighted works, including the ACT tests and questions, are original works of authorship that constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq.

100. Plaintiff owns the exclusive rights and privileges in and to the above-referenced copyrighted works, and in compliance with the law, has received from the Register of Copyrights the appropriate certificates of registration, which constitute prima facie evidence of the validity of the copyrights in the works and of the facts stated in the certificates.

101. At all relevant times, Plaintiff or its predecessor in interest has owned all applicable right, title and interest in and to these copyrighted works.

102. Mr. Hildebrandt intentionally copied and distributed ACT's copyrighted works as described above.

103. Mr. Hildebrandt has infringed Plaintiff's copyrights by reproducing and distributing, and possibly preparing derivative works of, Plaintiff's copyrighted work without Plaintiff's permission.

104. NCTPF will continue to infringe Plaintiff's copyrights by reproducing and distributing, and possibly preparing derivative works of Plaintiff's copyrighted work without Plaintiff's permission.

105. Mr. Hildebrandt and NCTPF's infringement of Plaintiff's copyrights has been deliberate, willful and in utter disregard of Plaintiff's rights.

106. By reason of Defendants' infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage.

107. As a result of Defendants' willful and intentional infringement, ACT has and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

108. Plaintiff is entitled to recover statutory damages as a result of Defendants' willful and intentional infringement.

109. WHEREFORE, ACT seeks relief as set forth at the end of this Complaint.

## SECOND CLAIM FOR RELIEF
(Contributory Copyright Infringement; 17 U.S.C. § 101, et seq. – Mr. Hildebrandt)

110. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

111. NCTPF is directly infringing upon Plaintiff's copyrighted materials by reproducing and distributing Plaintiff's copyrighted materials through the eKnowledge platform.

112. As the prior owner of the eKnowledge Platform, Mr. Hildebrandt transferred the eKnowledge platform, including the infringing elements, to NCTPF.

113. Mr. Hildebrandt knew that by operating the eKnowledge platform, NCTPF would be infringing ACT's copyrights due to (1) Mr. Hildebrandt's role in copying ACT's copyrighted

15

materials to create the eKnowledge platform, (2) this lawsuit, and (3) his subsequent donation of the materials to NCTPF.

114. By creating the eKnowledge platform and transferring eKnowledge's intellectual property to NCTPF, Mr. Hildebrandt materially contributed to NCTPF's infringing activities.

115. By reason of Defendants' infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage.

116. ACT is entitled to statutory damages as a direct result of Mr. Hildebrandt's willful and intentional infringement.

117. WHEREFORE, ACT seeks relief as set forth at the end of this Complaint.

### THIRD CLAIM FOR RELIEF
(Voidable Transfer Utah Code Ann. § 25-6-202 – All Defendants)

118. Plaintiff incorporates by reference the foregoing factual allegations as though fully set forth herein.

119. ACT is a creditor of Mr. Hildebrandt due to its claim against him.

120. When ACT filed this lawsuit against Mr. Hildebrandt, Mr. Hildebrandt represented that he was the sole owner of the eKnowledge platform.

121. On or around March 31, 2025, after discovery commenced in this litigation, Mr. Hildebrandt transferred the eKnowledge platform subject to this lawsuit from himself to the NCTPF.

122. Mr. Hildebrandt transferred the eKnowledge platform with the actual intent to hinder and delay ACT's lawsuit and ability to protect its rights.

123. The March 31, 2025 conveyance has all the hallmarks of an intentional voidable transfer, and the traditional "badges of fraud" are present:

16

(a) The March 31, 2025 conveyance was to an insider. Mr. Hildebrandt serves as the NCTPF's President, and he and several members of his immediate family make up 75% of the NCTPF's Board of Directors;

(b) Mr. Hildebrandt retained control over the eKnowledge platform;

(c) Mr. Hildebrandt effectuated the transfer after he had been sued by ACT;

(d) Mr. Hildebrandt transferred the majority, if not all, of the assets associated with the eKnowledge platform; and

(e) Mr. Hildebrandt conveyed the eKnowledge platform for no consideration as part of a donation agreement, and as part of a concerted effort to avoid liability.

124. Mr. Hildebrandt "donated" the claimed IP and other assets to NCTPF.

125. Mr. Hildebrandt did not receive a reasonably equivalent value in exchange for the transfer to NCTPF.

126. As a result of his transfer to NCTPF, Mr. Hildebrandt arguably cannot comply with a Court order enjoining him from engaging in ongoing infringement.

127. Upon information and belief, as a result of his transfer to NCTPF, it is unlikely that Mr. Hildebrandt could satisfy a judgment against him.

128. NCTPF, acting through Mr. Hildebrandt as its President, now purportedly owns the transferred intellectual property, which comprises all of Mr. Hildebrandt's rights in the eKnowledge platform.

129. This transfer was done in order to perpetuate the ruse that NCTPF—rather than Mr. Hildebrandt—controls the eKnowledge platform and to shield Mr. Hildebrandt from liability from ACT.

17

130. NCTPF did not obtain the eKnowledge platform in good faith or for value.

131. NCTPF had knowledge of Plaintiff's lawsuit. On information and belief, NCTPF acted through Mr. Hildebrandt or members of his immediate family at all relevant times.

132. The circumstances justify an order unwinding this voidable transfer and allowing ACT to bring this lawsuit against Mr. Hildebrandt and/or holding that NCTPF is holding the eKnowledge platform in constructive trust for the benefit of Mr. Hildebrandt's creditors, including Plaintiff.

133. WHEREFORE, ACT seeks relief as set forth at the end of this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

1. Avoidance of the voidable transfer between Defendant Scott Hildebrandt and Defendant NCTPF.

2. Creation of a constructive trust that inures to the benefit of Plaintiff as Mr. Hildebrandt's creditor and holds the eKnowledge platform.

3. Entry of a preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with them from:

    (a) Infringing Plaintiff's copyrights; and

    (b) Conveying or otherwise transferring the eKnowledge platform.

4. Statutory and consequential damages, as allowed by applicable law.

5. Punitive damages, as allowed by applicable law.

6. Reasonable attorneys' fees and costs, including expert witness fees, as permitted by applicable laws.

7.    Interest, as permitted by applicable laws.

8.    For such other and further relief as the Court deems just and proper.

Dated: March 25, 2026             Respectfully Submitted,

**MARSHALL OLSON & HULL, P.C.**

By: */s/ Jason R. Hull*
     Jason R. Hull

**DAVIS GRAHAM & STUBBS LLP**
     Emily Wasserman
     Maxwell E. Hamilton

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that this 25th day of March, 2026, I caused the foregoing **FIRST AMENDED COMPLAINT** to be filed through the Court's electronic filing system, and to be served via email to the following:

Scott Hildebrandt
shildebrandt@eknowledge.com

<u>/s/ Jason R. Hull</u>